UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.N., a minor, by and through his parent SCOTT NASTRO, on behalf of himself and all others similarly situated,<br><br>                 Plaintiff<br><br>  -against-<br><br>FACEBOOK, INC.,<br><br>                 Defendant. | Civ. Action No. 11-cv-2128<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>*JURY TRIAL DEMANDED* |

Plaintiff J.N., a minor, by and through SCOTT NASTRO as father and general guardian, individually and on behalf of all others similarly situated, alleges the following against Facebook, Inc. (the "Company"), based on personal knowledge, information and belief, and their counsel's investigation:

## NATURE OF THE ACTION

1. This is an action pursuant to New York Civil Rights Law § 51 for misappropriation of the names and likenesses of children, seeking compensatory damages, injunctive relief, and exemplary damages due to violations by Facebook, Inc. of New York Civil Rights Law §50.

2. Pursuant to Fed. R. Civ. P. 17(c), Plaintiff, through his father and general guardian, brings this case as a class action on behalf of a consumer class consisting of all minors in New York whose names or likenesses were used by Facebook, Inc. for commercial purposes without the consent of the parents or guardians of said minors.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to the Class Action Fairness

1

Act, codified at 28 U.S.C. § 1332(d), because there is the requisite diversity of citizenship between the plaintiff and/or at least one member of the purported class and defendant and because plaintiff believes the aggregate amount in controversy exceeds $5 million. *See* 28 U.S.C. § 133(d)(2).

4.      Venue is proper in this District under 28 U.S.C. § 1391(a) because: (i) the conduct from which this cause of action arises occurred in this District; and (ii) defendant transacts business in this district.

## PARTIES

5.      Plaintiff J.N. is a minor residing in the County of Kings, State of New York, and is a member of the Facebook social networking site ("Facebook") whose his name and likeness has been appropriated by Facebook, Inc. for commercial advantage without the consent of his parents. Scott Nastro is the parent and general guardian of J.N., and is a resident of the County of Kings, State of New York

6.      Defendant Facebook, Inc. is a corporation organized and existing under the laws of the State of Delaware, and has its headquarters and principal place of business is the City of Palo Alto, County of Santa Clara, State of California. Facebook, Inc. privately owns and operates Facebook.

7.      Facebook, Inc. is a foreign corporation registered to do business in New York State.

8.      Since Facebook was founded in February, 2004 by Facebook, Inc., the social utility has garnered world-wide success, reporting over 500 million active users – users who have accessed the site within the preceding 30 days – as of July 21, 2010. The number of users under the age of 18 residing in New York is currently unknown but based on the demographic is

believed to be hundreds of thousands of individuals. Because Facebook, Inc. is a privately held company, figures regarding its use and sources of revenue are not publically available, but because younger persons are generally seen to be early adapters to new technologies for communication, the number of users under the age of 18 is believed to be equal to or greater than their proportionate share of the population at large.

## CLASS ACTION ALLEGATIONS

9. **Class Definition**: Pursuant to Rules 23(a); (b)(1), (b)(2) and (b)(3), Plaintiff brings this action on his own behalf and in a representative capacity on behalf of all persons similarly situated (the "Class"):

> All persons who, from November 6, 2007 through the present (the "Class Period"): (1) were under the age of 18 years; (2) were New York residences; (3) were members of Facebook and (4) while under the age of 18 years, had their names or likenesses used on a Facebook feed or in an advertisement sold by Facebook, Inc., without the consent of their parent or guardian.

10. Excluded from this Class are: Defendants, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures or entities controlled by Defendant; the Judge assigned to this action, any member of the Judge's immediately family; and counsel for Plaintiff.

11. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint.

12. **Numerosity**: Plaintiff does not know the exact size of the Class since such information is exclusively in the control of Defendant. Plaintiff believes that there are thousands of Class members, and that they are sufficiently numerous and geographically dispersed

throughout the state so that joinder of all members is impracticable.

13.     **Commonality**: There are questions of law and fact common to the members of the Class, and those common questions predominate over any question which may affect only individual members of the Class, because Defendant has acted on grounds generally applicable to the entire class. Among the predominant questions of law and fact common to the Class are:

   a. whether Defendant violated New York Civil Rights Law § 50;

   b. the amount of gross revenue and profit obtained by Defendant attributable to their violations of New York Civil Rights Law § 50; and

   c. the appropriate nature of class-wide injunctive and equitable relief.

14.     **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all Class members were damaged by the same wrongful conduct of defendant.

15.     **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class. The interests of Plaintiff coincide with and are not antagonistic to, those of the Class. In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action and antitrust litigation.

16.     **Rule 23(b)(1)(B) Requirements**: Class action status in this action is warranted under Rule 23(b)(1)(B) because prosecuting separate actions for members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair of impede their ability to protect their interests.

17.     **Other Rule 23(b) Requirements**: Class action status is also warranted under subsections of Rule 23(b) because (i) prosecuting separate actions by the members of the Class

would create a risk of establishing incompatible standards of conduct for Defendant; (ii) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class as a Whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

18.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative exists for the fair and efficient adjudication of this controversy on behalf of plaintiff and the members of the class.

## SUBSTANTIVE ALLEGATIONS

19.     Facebook is a social networking site designed to help its members ("users") communicate more efficiently with their friends, family and acquaintances by "facilitate[ing] the sharing of information through the social graph, the digital mapping of people's real-world social connections." *See* Facebook Factsheet, available at www.facebook.com/press/info.php?factsheet ("Factsheet").

20. Facebook is accessible through its online domain at http://www.facebook.com and accounts are available at no charge to anyone over the age of 12.

21. Once members, users can search for other users and invite them to become their Facebook Friends. Each Face book Friendship invitation must be approved by the invited user.

22. Users are also invited to join one or more networks, each based around a workplace, high school, or college.

23. Each user is assigned a unique profile page ("Profile"). A user's Profile displays personally identifying information about the user, including, among other things, a user's name, schools, employers, birthday, hometown and relationship status. The Profile also displays a photo of the user. Once the online application for membership to Facebook has been approved, users are immediately encouraged to fill in their Profile information and upload a photo. Aside from their name, users can fill out as much or as little as this personally identifying information as they choose.

24. Each Profile has two versions – the publically available version designed to allow users to find one another and the version available to a user's Facebook Friends. The information available to other users in each version can be partially limited based on a user's Privacy Settings.

25. In addition to a Profile, each user has a personalized Home page. *See* Factsheet. The Home page contains a feed of the Facebook activities and status updates of the user's Facebook Friends. For example, if a Facebook Friend of Plaintiff Nastro has updated his status as "watching television with my parents," Nastro will see that status on his Home page next to his friend's name and profile picture, provided that his friend's privacy settings are set accordingly.

**Privacy Settings**

26. Facebook provides users with the ability to set their own level of privacy – limiting the information available to the public and other users – with few exceptions.

27. Users control their privacy settings through their account's Privacy Settings Page. On the Privacy Settings Page, Facebook breaks all of the potentially shared information into groups. For example, a user's status, photos and posts are grouped together and controlled inseparably.

28. Each group can be assigned a separate level of privacy. The levels of privacy are: (i) Friends Only; (ii) Friends of Friends; (iii) Everyone; and (iv) Custom. The Custom setting allows users to limit sharing on a friend-by-friend basis.

29. Facebook sets each group to its "recommended" privacy level by default. For example, the group including a user's status, photos and posts is automatically set to the "Everyone" setting. The default privacy settings for a minor's account are shown in Exhibit A.

30. According to Facebook, the "Everyone" setting works differently for minors than adults. Whereas, with adults, information set to be shared with "Everyone" is, in fact, publically available to everyone on the internet (*see* www.facebook.com/help/?faq=14444), when minors set information to be visible to "Everyone," that information is actually only visible to their friends, friends of friends, and people in any verified school or work networks they have joined. *See* www.facebook.com/help/?faq=16397.

**Facebook Advertising and Minors**

31. Since late 2007, Facebook, Inc. has been selling advertisements on Facebook as its primary means of generating income. With complete access to the information provided in

users' profiles as well as the information generated through users' networking activities, Facebook, Inc. is uniquely able to offer advertisers the ability to direct their ads to very specific demographics.

32.  On or about November 6, 2007, Facebook unveiled "Social Ads" or ads that, in addition to the advertisement displayed by the advertiser, would also display the names and/or likenesses of a user's Facebook Friends who had interacted with the ad or the advertiser's brand page.

33.  This type of endorsement-advertising has existed in one form or another since November of 2007. Currently, advertisements are displayed on Facebook along with a "Like" button or, in the case of events, the ability to RSVP through the ad itself. When a user "Likes" a Facebook page through an ad or responds to an Event, the user's action is recorded on the Facebook Page or Event page along with the user's name and likeness. For example, if Plaintiff Nastro were to "Like" an advertisement by XYZ, Inc., when his Facebook Friends viewed XYZ, Inc.'s Facebook Page, they would see "1 Friend Likes" that page, with Nastro's name and photo appearing in the margin.

34.  Additionally, when a user "Likes" a brand or responds to an event invitation, a corresponding message is displayed to their Facebook Friends' Home page feed announcing their endorsement. Thus, not only will Nastro's Facebook Friends see his name and likeness on XYZ Inc.'s Page, they will also see a post on their own Home page noting that "Nastro Likes XYZ, Inc."

35.  Users can prevent their endorsements from being shared with their friends by limiting who can see their posts through their Privacy Settings. They can also "unlike" a page immediately after having "Liked" it.

36. There is, however, no mechanism in place by which a user can prevent their name and likeness from appearing on a Facebook Page if they have "Liked" it, nor can their name or likeness be removed as long as they continue to "Like" the Page.

37. Advertisers can purchase ads on a Cost-Per-Click ("CPC") or Cost-Per-Impression ("CPI") basis. With the CPC, an advertiser pays Facebook every time a user clicks through an ad to the advertiser's landing page. If an advertisement directs users to a Facebook Page or Event, advertisers will also pay Facebook whenever a user "Likes" the Page or RSVPs to the event through the ad itself. Each of these actions is considered a "Click," according to Facebook. *See* http://www.facebook.com/help/?faq=14627. Thus, every time a user likes a brand of Facebook Page, Facebook, Inc. profits.

38. Facebook offers its advertisers the ability to direct ads to specific age groups so that target markets will be most likely to click through to the ad and cost the advertiser money.

39. The apparent endorsement of a good or service in an advertisement by one user who is recognizable to other users will generate more clicks for an advertiser, and thereby generate more revenue for Facebook, Inc.

40. In the course of using the names and likenesses of Facebook members in advertising, Facebook regularly and frequently includes the names and likenesses of minors without obtaining consent for that use. Children are a large marketing audience, so that endorsements that include the names and likenesses of other children in advertisements and solicitations generate a great increase in the revenue and profits to Facebook. This increased revenue and profit occurs in the case of endorsements advertisements by increasing exposure of the ads within preexisting social groups, and thereby increasing the chance that the advertisement will by clicked.

9

41. The revenue for Facebook, Inc. associated with its social networking site has been reported to be close to or approximately $800 million in the year 2009. Facebook, Inc. is not a publically held or traded company so its income figures are not generally available to the public.

42. Facebook, Inc. appears to be continually seeking new ways to use the names and likenesses of its members, including children, for its own marketing purposes. In addition to displaying users' names and likenesses as detailed above, Facebook also displays users' names and likenesses to promote its own recruitment utility, Friend Finder.

43. Friend Finder can appear in the margin of any Facebook page, with a message encouraging users to supply their login information to various third-party applications so that Facebook can import the user's third-party contacts and compare those contacts with its own membership. Once the login information is confirmed, Friend Finder displays two groups of results: (i) third-party contacts with existing Facebook accounts; and (ii) email addresses for third-party contacts without existing Facebook accounts. Users are encouraged add those contacts with memberships as their Facebook Friends and to invite their third-party contacts without accounts to Facebook by simply selecting that option and clicking a button.

44. Thus, Friend Finder serves the dual purpose of both connecting Facebook users and increasing Facebook's own membership which increases the size of Facebook's advertising market and generates significantly more revenue for Facebook. In spite of Facebook, Inc.'s characterization of Friend Finder (http://www.facebook.com/help/?faq=18442), Friend Finder clearly serves as an advertisement.

45. In addition to its message encouraging users to import their contacts, Friend Finder typically displays the names and/or likenesses of any Facebook Friends who used the Friend Finder utility in the past. *See* http://www.facebook.com/help/?faq=18442. This is a further

commercial use of the names and likenesses of minors without legal consent.

46. The business model of Facebook indicates that using the names and likenesses of its members, including children, for marketing and revenue generating purposes is integral to its operating system and will continue and likely increase in the future.

**Facebook, Inc. Does Not Obtain the Legal Consent of Its Minor Members
to use their Names and/or Likenesses for Marketing Purposes**

47. The current Statement of Rights and Responsibilities posted by Facebook, Inc. on Facebook includes the following section regarding advertising:

> 10. **About Advertisements and Other Commercial Content Served or Enhanced by Facebook**
>
> Our goal is to deliver ads that are not only valuable to advertisers, but also valuable to you. In order to do that, you agree to the following:
>
> 1. You can use your privacy settings to limit how your name and profile picture may be associated with commercial, sponsored or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place.
> 2. We do not give your content or information to advertisers without your consent.
> 3. You understand that we may not always identify paid services and communications as such.

48. The foregoing section 10 of the Statement of Rights and Responsibilities once agreed to by a Facebook member, does not amount to "consent" by that member for the use of the name and likeness of the member for Facebook's own commercial and marketing activities, nor does it amount to consent for Facebook to sell to third parties the right to use the name and likeness of the member for commercial and marketing purposes.

49. As a practical matter, a user cannot consent to having their name or likeness used

11

in an advertisement when Facebook does not identify certain advertisements as paid services and communications.

50.     Moreover, even if section 10 of the Statement of Rights and Responsibilities did constitute consent to users over the age of majority, Facebook does not obtain consent to use the names and likeness of minors for commercial and marketing purposes. Pursuant to New York Civil Rights Law § 50, consent of a parent or legal guardian is required prior to using a minor's name or likeness in an advertisement.

51.     At no time does Facebook seek or obtain the consent of any parent or guardian of its minor users to use or sell the name and likeness of the child for commercial use by Facebook or third-party advertisers.

**FIRST CAUSE OF ACTION**
**(Violation of New York Civil Rights Law § 50)**

52.     Plaintiff incorporates the allegations contained in the paragraphs above as if they were fully set forth in this Count.

53.     From November, 2007 and continuing to the present, Facebook, Inc. has regularly and repeatedly used the names and/or likenesses of plaintiff and the members of the Class for the commercial purpose of marketing, advertising, selling and soliciting the purchase of goods and services.

54.     Facebook, Inc. did not first obtain the consent of plaintiff and members of the Class before using their names or likenesses for commercial and marketing purposes.

55.     Even if Facebook, Inc. had obtained consent of minor class members, such consent is inadequate under New York Civil Rights Law, § 50.

56.     Pursuant to New York Civil Rights Law, §50s,

> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

(emphasis added).

57. Facebook, Inc. did not first obtain prior consent of the parents or legal guardians of the plaintiff and members of the Class before using their names or likenesses for commercial and marketing purposes.

58. New York Civil Rights Law § 51 provides that:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action …against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages

59. Plaintiff has incurred attorney's fees and costs which are recoverable under New York Civil Rights Law § 51 in an amount to be determined according to proof at trial.

### PRAYER FOR RELIEF

WHOSEFORE, Plaintiff, on behalf of himself and the members of the Class, pray for the Court to enter judgment as follows:

A. for a determination that this action may be maintained as a class action;

B. for all profits and revenues received by Defendant from the unauthorized commercial use of the names and/or likenesses of Plaintiff and the Class members;

  C. for an injunction against the further commercial use by Defendants of the names and likenesses of children in New York without the consent of the parents or guardians of each such child;

  D. for exemplary damages in an amount to be determined at trial.

  E. for such other and further relief that the Court may deem just and proper.

.

Dated: May 3, 2011    **SQUITIERI & FEARON, LLP**

          /s/ Lee Squitieri
          Lee Squitieri
          Garry T. Stevens, Jr.
          SQUITIERI & FEARON, LLP
          32 East 57th Street, 12th Floor
          New York, New York 10022
          Telephone: (212) 421-6492
          Facsimile:(212) 421-6553
          lee@sfclasslaw.com
          garry@sfclasslaw.com

          LAW OFFICES OF JOSEPH R. SANTOLI
          Joseph R. Santoli
          340 Devon Court
          Ridgewood, New Jersey 07450
          Tel: (201) 926-9200
          Fax: (201) 444-1583
          jsantoli@santolilaw.com

          *Attorneys for Plaintiff*

Exhibit A

| Search | Home Profile Find Friends Account |

## Choose Your Privacy Settings

Since you're under 18, we take extra steps to protect your information. Learn more

### Connecting on Facebook
Control basic information your friends will use to find you on Facebook. View Settings

### Sharing on Facebook
These settings control who can see what you share.

| | | Everyone | Friends of Friends | Friends Only |
|---|---|---|---|---|
| **Everyone** | Your status, photos, and posts | • | | |
| | Bio and favorite quotations | • | | |
| **Friends of Friends** | Family and relationships | • | | |
| | Photos and videos you're tagged in | | • | |
| **Friends Only** | Religious and political views | | • | |
| | Birthday | | • | |
| Recommended | Permission to comment on your posts | | | • |
| | Places you check in to | | | • |
| | Contact information | | | • |

☑ Share a tagged post with friends of the friend I tag

Customize settings                          This is your current setting.

### Applications and Websites
Edit your settings for using applications, games and websites.

### Block Lists
Edit your lists of blocked people and applications.

### Controlling How You Share
Learn more about your privacy on Facebook.

Facebook © 2010 · English (US)            About · Advertising · Developers · Careers · Privacy · Terms · Help

Chat (0)