

Jonathan Bach                                                                    BY HAND
(212) 479-6470
jbach@cooley.com


July 26, 2011

The Honorable Frederic Block
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

**RE: Nastro v. Facebook, Inc., No. 11-CV-2128-FB-ALC**

Dear Judge Block:

Defendant Facebook, Inc. ("Facebook") respectfully requests a pre-motion conference concerning its anticipated motion to dismiss Plaintiff's Amended Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Under this Court's Individual Motion Practices, this letter constitutes timely service of a Rule 12(b) motion.

**Background**

Facebook is a free social networking website that enables people to connect and share content with their families and friends.  On Facebook's website, each Facebook user ("User") creates a personal network of Facebook "Friends" and creates a profile page on which the User and his or her Friends can post greetings and information that they want to share.  To create a profile, a User need only submit his or her name, age, gender, and a valid email address, and agree to the site's terms of service.  The User may also, but is not required to, upload a "profile picture."

Among other ways of sharing on Facebook, Users can tell Friends they like a political figure, cause, brand, product, or other item by clicking on a button labeled "Like."  When a User clicks on this button, his or her "Like" statement, accompanied by his or her name and profile picture (if the User has one), may be published to Friends' "News Feeds"—a running list of updates by a User's Friends—or alongside an advertisement for something the User has "Liked."  Similarly, if a User goes to a Facebook page for, say, a political figure or brand and clicks the "Like" button, the User's "Like" statement, accompanied by his or her name and possibly profile picture, may be visible to his or her Friends if they later view that page.  A User's name and profile picture may also appear next to a link to Facebook's "Friend Finder" utility, which helps Users find Friends.  Plaintiff, on behalf of himself and a putative class of New York Users aged 13 to 17, asserts that Facebook violated New York Civil Rights Law Section 50 ("Section 50") by using teenage Users' names and likenesses on its website "for advertising purposes" without obtaining parental consent.[1]

---

[1] Plaintiff's counsel have filed similar actions in the Northern District of California (alleging a putative class of Users in all 50 states) and in California Superior Court (alleging a putative class of California Users).



Hon. Frederic Block
Page Two

**Plaintiff's Complaint Should Be Dismissed Under Rules 12(b)(1) and 12(b)(6)**

Plaintiff's Complaint should be dismissed on several grounds. First, Plaintiff fails to allege an injury in fact that gives him standing under Article III of the U.S. Constitution. Second, the Communications Decency Act ("CDA"), 47 U.S.C. § 230, bars Plaintiff's claim. Third, Plaintiff's claim is preempted by the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq.* Fourth, the Complaint fails to state a claim for violation of Section 50.

### A. Plaintiff Lacks Article III Standing

To have standing under Article III to pursue this action, Plaintiff must allege facts sufficient to establish that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Plaintiff lacks standing because there is no allegation that he even used Facebook's "Like" button or that his name or likeness have appeared next to a link to Friend Finder; nor is there any allegation of resulting economic or emotional injury. *See Gaos v. Google, Inc.*, No. 10-CV-04809-JW, slip op. at 5 (N.D. Cal. Apr. 7, 2011); *LaCourt v. Specific Media, Inc.*, No. SAVC 10-1256-GW(JCGx), 2011 WL 1661532, at *3-4 (C.D. Cal. Apr. 28, 2011). Moreover, another district court recently ruled that the mere allegation that Facebook has used a User's name or likeness in connection with Friend Finder does not constitute "cognizable harm." *Cohen v. Facebook, Inc.*, No. C 10-5282 RS, slip op. at 8-9 (N.D. Cal. June 28, 2011). Accordingly, Plaintiff has not alleged facts that give him Article III standing, and the Complaint should be dismissed.

### B. CDA Section 230 Bars Plaintiff's Claim

CDA Section 230 provides immunity against "any State or local law" that seeks to impose liability on "an interactive computer service" for publishing "information provided by another information content provider." 47 U.S.C. §§ 230(c)(1), (e)(3). Expressly enacted "to promote the continued development of the Internet" and to ensure that the Internet remains "unfettered by Federal or State regulation," *id.* § 230(b)(1)–(2), CDA Section 230 has consistently been held to confer broad immunity on websites like Facebook. *See, e.g., Shiamili v. Real Estate Group of N.Y., Inc.*, --- N.E.2d ---, 2011 WL 2313818, slip op. at 6-8 (N.Y. 2011) (citing authorities).

CDA Section 230 bars Plaintiff's claims. *See Gibson v. Craigslist, Inc.*, No. 08 Civ. 7735(RMB), 2009 WL 1704355, at *3 (S.D.N.Y. June 15, 2009). First, Facebook is an "interactive computer service," defined as "any information service . . . that provides or enables computer access by multiple users to a computer server . . . ," and it is therefore entitled to the protection of Section 230. *See* 47 U.S.C. § 230(f)(2); *Finkel v. Facebook, Inc.*, No. 102578/09, 2009 WL 3240365 (N.Y. Sup. Ct. Sept. 15, 2009). Second, Plaintiff seeks to treat Facebook as the publisher of the information at issue—here, Facebook Users' statements that they "Like" certain content and their names and likenesses. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (barring plaintiff's right of publicity claim). Third, the information was provided by "another information content provider," namely, the Users themselves. When a website user provides information to publish, that user is an "information content provider" for purposes of the CDA. *Shiamili*, --- N.E.2d ---, slip op. at 11-12. And that is equally true where, as here, the



Hon. Frederic Block
Page Three

content provider is the party suing over the website's display of that content.  *See Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008).

### C. Plaintiff's Claim Is Preempted by COPPA

The comprehensive regulatory scheme Congress established under COPPA provides an additional basis for dismissing Plaintiff's claim.  COPPA requires operators of websites "directed to children"—defined as anyone under 13 years old—to obtain parental consent before collecting or using children's personal information.  15 U.S.C. §§ 6501(1), 6502(a).  COPPA expressly and broadly preempts any state law that regulates the use of private information in a manner that is "inconsistent with" the framework adopted by Congress.  *Id.* § 6502(d).  In adopting this framework, Congress considered, and rejected, a parental consent requirement for minors aged 13 to 17 (precisely the putative class alleged here), largely because of the potential First Amendment implications of restricting teenagers' Internet use.  *See* Testimony of the FTC before the Subcommittee on Consumer Protection, Product Safety, and Insurance, July 15, 2000, at 14-15; *cf. Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2742 (2011) (holding statute that prohibited sale of violent video games to minors violated First Amendment).  Accordingly, imposing liability for Facebook's alleged failure to obtain parental consent is "inconsistent with," and preempted by, COPPA.

### D. Plaintiff Fails to State a Claim

Plaintiff fails to state a claim for violation of Section 50.  First, Plaintiff does not have standing to sue under Section 50, because, as explained above, he has not suffered "any injuries sustained by reason of" Facebook's alleged use of his name or likeness.  *See* N.Y. Civ. Rights Law § 51; *see also Cohen v. Facebook*, No. C 10-5282 RS, slip op. at 8-9.  Second, Section 50 applies only to the use of one's name or likeness by *another*.  *Rhodes v. Sperry & Hutchinson Co.*, 193 N.Y. 223, 227-28 (1908).  Therefore, to the extent Plaintiff alleges that Facebook is liable for Users' voluntary decisions to upload and then to use their own names and likenesses by clicking on Facebook's "Like" button, Section 50 does not apply.  Third, Section 50 does "not apply to reports of newsworthy events or matters of public interest."  *Messenger v. Gruner + Jahr Print. & Publ.*, 94 N.Y.2d 436, 441 (2000).  The "newsworthy" exception is to be "broadly construed," and includes, among other things, the use of name and likeness in relation to "political happenings," "social trends," and "any subject of public interest."  *Id.* at 441-42.  Facebook's alleged republication of Users' "Likes" to express their political interests, consumer preferences, and other interests to their Facebook Friends falls comfortably within this exception and therefore does not violate Section 50.

For these reasons, which we are prepared to set forth at greater length in a formal brief, Facebook contends that Plaintiff's Complaint should be dismissed.  We would be glad to discuss these issues at the upcoming conference.

Respectfully submitted,

*/s/ Jonathan Bach*

Jonathan Bach